UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
UNITED STATES OF AMERICA               :
                                       :
              -v-                      :        21cr317 (DLC)
                                       :           23cv3988
ELLIOT SMERLING.                       :
                                       :        OPINION AND
                                       :           ORDER
                      Defendant.       :
                                       :
-------------------------------------- X

DENISE COTE, District Judge:

　　Elliot Smerling, appearing pro se, has petitioned for a
reduction in his sentence pursuant to 28 U.S.C. § 2255 due to
ineffective assistance of counsel.  For the following reasons,
the petition is denied.


                        **BACKGROUND**

　　For approximately eight years, beginning in 2013, Smerling
engaged in a complex bank fraud scheme.  He created private
equity funds and raised capital from financial institutions and
individual investors through fraud.  The documents he created to
do so contained materially false statements about the funds'
assets and other facts critical to investors.

　　In 2018, Smerling secured a $60 million capital credit line
from Citizens Bank through false statements about one of his
funds.  In 2020, Smerling secured a credit line of $150 million

from Silicon Valley Bank through a series of false statements
about another fund.

On February 26, 2021, Smerling was arrested in the Southern
District of Florida on charges of wire fraud and aggravated
identity theft, in connection with the Silicon Valley Bank
scheme.  He was detained.  He arrived in New York on May 12, and
was indicted on that day in a three-count indictment with wire
fraud, bank fraud, and aggravated identity theft.

As of that time, Silicon Valley Bank was owed approximately
$80 million in outstanding principal.  Citizens Bank was owed
approximately $54 million in outstanding principal.

Shortly after his transfer to New York, Smerling indicated
a desire to cooperate with the Government.  In its sentencing
letter of May 7, 2022, the Government explains that it concluded
that he was forthcoming in his statements to the Government but
that his information did not rise to the level of substantial
assistance.  It declined to offer Smerling a cooperation
agreement.

On February 8, 2022, pursuant to a plea agreement, Smerling
pleaded guilty to a superseding information charging him with
bank fraud and securities fraud.  The plea agreement calculated
an offense level of 33 and a criminal history category of I,
resulting in a guidelines range of 97 to 121 months'

imprisonment.  The PreSentence Report ("PSR") contained the same calculation.

The Court sentenced Smerling on May 31, principally to 97 months' imprisonment.  The Government had recommended a sentence at the low end of the guidelines range; the Probation Office recommended a sentence of 72 months' imprisonment; the defendant sought a sentence of 33 months' imprisonment.

Defense counsel submitted a memorandum of thirteen pages in support of leniency.  Its attachments included letters from family members.  The submission emphasized Smerling's health and his efforts to cooperate.

As of the date of sentence, the two victim banks were owed roughly $134 million.  The receiver for the banks' claims had been able to recover about $16.4 million and was unable to account for about $30 million wrongfully taken by Smerling.  The receiver had been unable to locate the defendant's computers for his funds or anything other a minimal number of emails, and therefore had to recreate the books and records of the funds by using third-party documents.  The defendant's financial arrangements were complex.  He had at least 113 cash and investment accounts in more than twelve financial institutions located in five jurisdictions, including in Switzerland.  The

receiver's letter of May 6 was attached to the Government's sentencing submission.

Smerling filed a notice of appeal on May 27, 2022.  He later moved to voluntarily dismiss the appeal, and the appeal was dismissed on June 22, 2022.

On May 12, 2023, Smerling filed his pro se motion pursuant to § 2255 based on his assertion that his retained counsel had been ineffective.  Pursuant to the Government's request and the Court's order, on July 5, Smerling executed a waiver of his attorney-client privilege.  The Government's August 18 opposition to the petition includes affidavits from four of his counsel: David Kubiliun, Guy Lewis, and Adriana Collado-Hudak, each of whom represented him in the criminal case, and Philip Reizenstein, who represented him in related civil litigation.

Shortly after he received the Government's submission, in a document filed on September 20, Smerling moved to compel production of documents and for additional time to respond to the Government's opposition to his petition.  The Court granted the request for an extension, but denied the motion for discovery on October 2, without prejudice, pending the Court's review of the petition.[1]  Smerling replied on November 4.

---

[1] The request for discovery is denied with prejudice.  Having reviewed the petition, the documents Smerling requested would not have altered the decision reached herein regarding the

## DISCUSSION

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to
> be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of
> the United States ... may move the court which imposed
> the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255.

In his petition, Smerling alleges that his counsel provided him ineffective assistance.  Claims of ineffective assistance of counsel are assessed under the well-established standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).

"To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's representation 'fell below an objective standard of reasonableness' and (2) this deficient performance caused prejudice to the defendant -- that is, 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  United States v. Overton, 24 F.4th 870, 880 (2d Cir. 2022) (quoting Strickland, 466 U.S. at 688, 694).  To satisfy the second prong of Strickland in the context

merits of his petition.  Indeed, in his reply, Smerling does not make any further reference to his need for the documents.

of sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." Gonzalez v. States, 722 F.3d 118, 130 (2d Cir. 2013).

"Courts reviewing ineffective assistance of counsel claims are highly deferential, and must strongly presume that counsel made all significant decisions in the exercise of reasonable professional judgment." United States v. Rosemond, 958 F.3d 111, 121 (2d Cir. 2020) (citation omitted). "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances. Id. (citation omitted).

Smerling's petition does not seek to vacate his conviction. He does seek a reduction in his sentence to 59 months' imprisonment followed by two years of supervised release. In support of his petition, he identifies essentially eight claims of ineffective assistance of counsel by his retained attorneys.

I.   Application for Release on Bail

Smerling contends that defense counsel should have sought his release on bail after the defendant arrived in the Southern District of New York. He explains that, had he been released from custody, he could have better supervised his attorneys and avoided contracting Covid-19.

6

Smerling's counsel were experienced criminal defense attorneys.  Despite their concerted efforts, they failed to obtain his release on bail following his arrest in Florida. When he arrived in the Southern District of New York, they discussed the issue of bail with the Government.  The Government opposed Smerling's release, pointing to his overseas bank accounts, his foreign travel and citizenship, and the millions of dollars in missing funds.  Defense counsel represent that they consulted with Smerling frequently, and that he was an active participant in his defense.  They explain that they and Smerling decided that he would be best served by offering his cooperation to the Government and trying to obtain a lenient sentence.  In reply, Smerling does not dispute the description given by his counsel of their efforts.

Smerling has not shown that his counsel's failure to petition this Court for release on bail prejudiced him.  He has not shown that such a request was likely to have been granted or that the failure to make the request prejudiced him at sentence. He has not shown, therefore, that the failure to make the request represented ineffective assistance.

II.  Whistleblower Action

Smerling contends that defense counsel should have filed a whistleblower action pursuant to the False Claims Act.  That

action would purportedly have accused the two victim banks of
wrongdoing.  He reasons that such an action could have assisted
him in his criminal prosecution either by allowing him to avoid
prosecution or to receive a lower sentence.

Smerling's former counsel explain that another inmate had
suggested a whistleblower strategy to Smerling.  His attorneys
discussed with him the risks of engaging in such civil
proceedings in the midst of his prosecution and advised him that
he would need to retain other counsel to pursue that course of
action if he decided to do so.  In any event, his counsel
negotiated with the SEC and arranged a settlement of its claims
against Smerling.  In his reply, Smerling does not dispute that
this is an accurate description of their conversations.

This claim of ineffective assistance of counsel fails.
Smerling was arrested and charged with serious criminal activity
before these discussions with his attorneys occurred.  He has
not shown that his accusations of wrongdoing by the banks would
have led to the dismissal of the charges brought against him.
Any wrongdoing on the part of the banks, which may have been
alleged in a whistleblower complaint, would not have exculpated
him of his own independent criminal activity.  Moreover, his
attorneys' obligations to him in his criminal case did not
include an obligation to pursue civil litigation he may have

wished to file.  Nor has Smerling shown that their advice to him
of the risks of pursuing his proposed strategy constituted
ineffective assistance.  Finally, he has failed to show that he
was prejudiced at sentence by their advice.

   III.  Offer of Cooperation

     Smerling contends that defense counsel were ineffective for
advising him to offer his cooperation to the Government.  He
explains that this decision prejudiced him because, during his
meetings with the Government, he admitted to engaging in fraud
over an eight-year period.  As further prejudice, he identifies
his agreement to enter a plea to a superseding information.
Smerling explains that both of these actions created a negative
portrait of him at sentencing.

     Smerling's former attorneys explain in their affidavits
that they thoroughly explained to Smerling the risks and
benefits of offering to cooperate, including the terms of the
proffer agreement that governed his meetings with the
Government.  They add that the Government also explained the
proffer agreement and its terms at the first meeting.  In the
attorneys' view, Smerling's offer to cooperate "significantly"
lowered his criminal exposure.

     This claim is dismissed for a failure to show either
ineffective assistance by counsel or prejudice.  Smerling does

not dispute in his reply that he thoroughly discussed these issues with his attorneys before meeting with the Government. Moreover, the plea to the superseding information allowed Smerling to avoid the charge for aggravated identity theft contained in the indictment, which carried a mandatory, two-year consecutive sentence. While Smerling complains that he did not receive as much credit for his offer of cooperation as he hoped he would, such disappointment is not evidence of a failure on his counsel's part.

   IV.   Missing Funds

     Smerling next asserts that his counsel failed to conduct an investigation to undermine the representation that there were approximately $25 to $30 million in missing funds. Defense counsel explain that they investigated the issue of the missing funds by repeatedly discussing the issue with Smerling, interviewing his former employees, and studying records. They were also permitted by the Government to meet with the FBI agents investigating the issue. They reviewed the financial evidence regarding the funds taken by Smerling from the banks in detail with the prosecutors and the receiver. None of that work supported Smerling's claim that the missing money could be explained as "back office" expenses. The attorneys explain as

well that they provided Smerling with the name of a forensic
accountant if he wished to retain one.

Smerling does not dispute in his reply any of these facts
described by his former counsel.  While he complains that the
attorneys should have spent some of the attorneys' fees he paid
them to arrange for a forensic audit, which Smerling estimates
would have cost around $5,000, he has not shown that his
attorneys were under an obligation to do so or that any such
audit would have proved useful to him.

Smerling has therefore failed to show either that his
attorneys were ineffective in their investigation of the missing
funds or that he was prejudiced by their failure to do more for
him in searching for an explanation.  He has not shown that a
further investigation would have assisted him in connection with
the sentencing decision.  This claim is therefore denied.

V.   Victim Impact Letter

Smerling argues that his counsel should have objected to
the letter filed by Silicon Valley Bank in connection with his
sentencing.  Defense counsel explain that they discussed with
Smerling that the bank was submitting a victim impact letter, as
the law permitted it to do.  Before sentencing, they also
discussed with Smerling whether he wanted counsel to ask for a

continuance and Smerling chose to move ahead with sentencing as scheduled.

In his reply, Smerling does not dispute the accuracy of this description of his conversations with his counsel.  He protests, however, that his counsel should nonetheless have objected to the letter and requested an adjournment to be better prepared to address the letter.

The Crime Victims' Rights Act requires the Government to notify victims of their rights to be heard during a sentencing proceeding.  18 U.S.C. § 3771.  Thus, the bank was, as Smerling's counsel informed him, permitted to send a letter to the Court, and the Court was required to consider it in connection with the sentence.  Smerling has failed to show any failure on the part of his counsel or any prejudice from actions they took in connection with the bank's letter.  He does not identify any false statement in the bank's letter that an investigation would have uncovered and that would have assisted him at the sentencing proceeding.

VI.   Sentencing Guidelines Calculation

Smerling argues that his counsel should have objected to a two-level sentencing guidelines gross receipts adjustment, pursuant to Sentencing Guidelines § 2B1.1(b)(1)(M), as duplicative of the amount of loss adjustment in

§ 2B1.1(b)(17)(A).  As the Government explains in its opposition memorandum, United States v. Kilkenny, 493 F.3d 122, 131 (2d Cir. 2007), allows for this adjustment.  Smerling's complaint in his reply that the Second Circuit's decision violates the Fifth Amendment of the Constitution is denied.

VII.  Defense Counsel's Sentencing Arguments

Smerling contends that his attorneys failed to argue for a reduced sentence because of the length of time he spent in custody during a pandemic.  Not so.  This claim, therefore, is denied.

Indeed, in his reply, Smerling acknowledges that his counsel did make such an argument for leniency.  He raises a new argument, however, contending that they should have argued that his pretrial detention prevented him from accumulating First Step Act credits and therefore he should be given a shorter sentence.  New claims not included in a petition may not be introduced through a reply.  In any event, Smerling has failed to show either that counsel was ineffective for not making this argument or that he was prejudiced because it was not made.

VIII.   Retention of the PSR

Finally, Smerling argues that, prior to the sentencing proceeding, his attorney failed to deliver a physical copy of the PSR to him.  Defense counsel represent that they provided the PSR to him during a meeting before sentence, that he read it

and that they thoroughly discussed it with him.  They did not
leave a copy with him, however.  They explain that its contents
would have placed him at risk in prison.  At the sentencing,
they represented to the Court that he had read it and they had
discussed it with him.  Smerling did not object to the accuracy
of that representation at the sentencing proceeding.

In his reply, Smerling does not dispute that his attorneys
provided him with a copy of the PSR to read, that he read it,
and that he discussed it with them in advance of sentencing.  He
contends, however, that he "never received" his PSR and as such
was "not able to read in detail what was in the report."

This final claim is also denied.  It is unnecessary to
resolve an implicit factual dispute between Smerling and his
counsel over whether he had enough time to read and fully
comprehend the contents of the PSR when they shared it with him
during their meeting before the sentencing proceeding.  If
Smerling needed a further opportunity to review the PSR, it was
incumbent on him to advise his counsel of that fact, and also at
the sentencing to advise the Court of that need.  At the
sentencing proceeding, the Court specifically inquired whether
he had read the PSR, discussed it with counsel, and whether they
had any objections to it.  In any event, Smerling has not shown
how he was prejudiced by not being given a copy of the PSR or

not having more time to review the PSR. He has not identified
any further objection that should have been made to the PSR,
much less any that would have impacted his sentence.

### CONCLUSION

Elliot Smerling's petition for a writ of habeas corpus,
filed on May 12, 2023, is denied. The defendant having not made
a substantial showing of a denial of a federal right, a
certificate of appealability shall not be granted. Hoffler v.
Bezio, 726 F.3d 144, 154 (2d Cir. 2013); Tankleff v. Senkowski,
135 F.3d 234, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d
24, 24 (2d Cir. 1990). Pursuant to 28 U.S.C. § 1915(a)(3), any
appeal from this Opinion and Order would not be taken in good
faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).

The Clerk of Court shall mail Smerling a copy of this Order
and note mailing on the docket.


Dated:     New York, New York
           January 11, 2024



                                    _____
                                    DENISE COTE
                                    United States District Judge


15